**UNITED STATES of America**

v.

**Clarence MORRIS, Defendant.**

**Crim. No. 90–171.**

United States District Court, District of Columbia.

May 31, 1990.

William Blier, John M. Seabright, Asst. U.S. Atty., Washington, D.C., for U.S.

Daniel Ellenbogen, Kensington, Md., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on defendant Clarence Morris' motion to suppress statements [1] and physical evidence. Defendant contends that certain statements he made and physical evidence that was seized from him must be suppressed because this evidence was the product of an unconstitutional seizure. The Government argues that the encounter between police officers and the defendant did not rise to the level of a seizure of defendant's person and that even if a seizure occurred the physical evi-

1. Although defendant has entitled his motion in this way, his papers and the hearing held before this Court failed to make clear what, if any, statements are actually at issue. Therefore, this opinion only addresses the question of whether the physical evidence seized should be suppressed. If defendant can point to specific statements that he wishes to have suppressed, he will be permitted to make an oral motion prior to trial.

dence recovered was not a fruit of that seizure.

## FINDINGS OF FACT

March 21, 1990, at approximately 3:55 p.m., officers of the District of Columbia Metropolitan Police Department Drug Interdiction Unit were working at the Greyhound/Trailways terminal located in Northeast Washington, D.C.[2] While performing his normal duties, Detective William Buss observed the defendant Mr. Morris and an unidentified male exit a Greyhound bus that had just arrived in Washington from New York City. Mr. Morris had a brief conversation with the other individual, handed him something, and returned to the bus.[3] Detective Buss noticed that the defendant was carrying what appeared to be a small black bag and that something appeared to be contained therein.[4] Detective Buss then observed the defendant re-enter the bus. The defendant proceeded to the rear of the bus to use the rest room.[5]

Detective Buss decided to continue his surveillance of the defendant. To that end, Buss boarded another Greyhound bus that was parked adjacent to the one the defendant boarded. At the same time that these events were occurring, the defendant's unidentified friend returned from the fast food restaurant. Prior to re-entering the bus, Detective Vance Beard approached this individual and identified himself as a police officer. Detective Beard and the defendant's companion then reboarded the bus. Detective Beard asked this individual some questions. The detective was satisfied with the responses that he received and left the bus. Detective Brennan, who had been acting as Beard's back-up, was situated in a seat at the front of the bus near the driver's seat and did not leave the bus.

While Detective Brennan was interviewing the defendant's friend, Detective Buss continued to observe the defendant's movements from the adjacent bus. Detective Buss testified that he saw the defendant take an aisle seat about half-way back into the bus. The defendant then moved over to the window seat and began to make arm and shoulder movements that indicated to Detective Buss that he was trying to stuff something between the seats on the bus.[6] Detective Buss decided to approach the defendant and ask him if he would cooperate by answering some questions.

Detective Buss then exited the empty bus in which he had been seated and entered the bus in which the defendant was seated. Detective Buss was accompanied by Detective Kimberly Oxendine while Detective Brennan remained seated at the front of the bus. All of the officers were in plain clothes and there service revolvers were concealed. Detectives Buss and Oxendine proceeded toward the rear of the bus walking past the defendant. Detective Oxendine remained positioned in the rear of the bus and Detective Buss approached the defendant from behind so as not to block the exit aisle of the row of seats where the defendant was seated.

Detective Buss identified himself as a police officer and asked the defendant if he would mind answering some questions.

---

2. Officers William Buss, Vance Beard, John Brennan, and Kimberly Oxendine were some of the officers present.

3. Defendant testified that he simply handed his friend a five dollar bill. The friend was going to get the defendant some food at a local fast food restaurant and to return to the bus with it. The Government has offered no evidence to challenge the defendant's explanation of this event and the Court credits the defendant's testimony on this point.

4. Detective Buss testified that he saw a "bulge" in the bag.

5. Detective Buss testified that he did not recall seeing the defendant go to the rear of the bus to use the rest room. The Court credits the defendant's testimony on this point because it is entirely consistent with the other undisputed facts. However, the defendant also stated that he remained in the rest room for close to twenty minutes. Although this Court accepts defendant's statement that he walked to the rest room upon reentering the bus, he may have overestimated the time he spent there.

6. The defendant testified that he never switched from an aisle to a window seat. On this point, the Court credits the testimony of Detective Buss.

The defendant agreed to this request. Detective Buss inquired as to the defendant's destination. The defendant responded that he was travelling to Richmond. Detective Buss then asked the defendant if he could see his bus ticket. With that question, the defendant exited his seat and walked forward approximately three (3) to four (4) rows and retrieved the black cloth object that Detective Buss had earlier seen him carrying.[7] The defendant had occupied this front seat which was directly behind the seat that was occupied by his unidentified male companion during the trip from New York to Washington. Although Detective Buss had thought that this object was a bag, in fact, it was nothing more than a detachable hood to a jacket. The defendant had been using the hood as a pillow. From inside of the hood, the defendant retrieved his ticket that reflected travel from New York to Richmond and presented it to Detective Buss. While Detective Buss was examining the ticket, the defendant sat down in the row of seats directly in front of the row in which Detective Buss had initially approached him. The defendant further stated that he would be staying in Richmond for one week. The defendant was unable to produce any identification and he told Detective Buss that he was not carrying any luggage.

Detective Buss then explained to the defendant that he was assigned to the Drug Interdiction Unit and that there was a problem with individuals bringing drugs into the city via the bus. Detective Buss proceeded to ask the defendant if he was carrying any guns or drugs. Mr. Morris responded that he was not. Detective Buss then requested permission to perform a limited pat-down of the defendant's person. The defendant assented to this request. While the defendant remained seated, Detective Buss conducted a brief pat-down for the purpose of determining whether the defendant was carrying a weapon.

After Detective Buss determined that the defendant was unarmed, he turned away from the defendant and went directly to the seat on the bus in which he had originally observed the defendant to be seated. He looked between the seats to see if the defendant had in fact hidden anything there. Detective Buss discovered a clear plastic bag with over thirty (30) small clear plastic vials. Such vials are considered drug paraphernalia since they are used in the packaging of illicit drugs for distribution. Detective Buss held up the plastic bag and displayed it to Detective Brennan who was still positioned at the front of the bus. Having discovered the vials, Detective Buss proceeded to ask the defendant to accompany him to the rest room at the rear of the bus so that a more thorough search could be performed. The defendant agreed to this request. Before Detective Buss and the defendant had a chance to walk to the rear of the bus, Detective Brennan approached the defendant and conducted a non-consensual pat-down search. During the course of this search, Detective Brennan recovered from the inside of the defendant's right sock a plastic bag that contained a white rock substance which later field tested positive for cocaine. The substance weighed approximately 28 grams.

## CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The Supreme Court has declared that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). The defendant has vigorously argued that the the initial encounter between himself and Detective Buss rose to the level of illegal seizure in violation of the Fourth

---

7. The defendant testified to a different series of events. He testified that prior to retrieving his ticket Detective Buss conducted a pat-down search of his person. Additionally, he stated that Detective Buss instructed him to open his pants and that Detective Buss examined his crotch area. Detective Buss categorically denied the defendant's testimony in this respect. This Court credits the testimony of Detective Buss and does not credit the defendant's testimony on this point.

Amendment. This Court does not consider this to be the relevant issue in the case.

■ The discovery of the plastic bag containing the viles was not a product of the encounter between Detective Buss and Mr. Morris. Rather, the defendant had abandoned the plastic bag thereby relinquishing any protections afforded by the Fourth Amendment. A warrantless or non-consensual search or seizure of property that has been abandoned does not violate the Fourth Amendment. *See e.g. Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). The Fourth Amendment affords protection only when 1) a person exhibits an actual (subjective) expectation of privacy; and 2) the person's expectation is one that society is prepared to recognize as "reasonable." *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

Here, once the defendant stuffed the plastic bag containing the vials into the crevice between the bus seats, he surrendered any reasonable expectation of privacy that he may have had in the contents of that bag prior to that time. "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Thomas*, 864 F.2d 843, 845 (D.C.Cir.1989), quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.) *cert. denied*, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983); *see also* 1 W. LaFave, Search & Seizure, § 2.6(b) (2d ed.1987). The critical fact in this case is that the defendant made a decision to place his property in a location that was out of control and open to the public. At the time he placed the bag between the seats and then left the area, nothing precluded another passenger from occupying that seat or the one next to it. Indeed, nothing would have prevented such a passenger from placing his/her hand between the seats and discovering the bag.

The test for abandonment in the search and seizure context is distinct from that utilized in the area of property law. *Thomas*, 864 F.2d at 845. The distinction has been explained in the following way:

In the law of property, the question ... is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest.... In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment.... In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

1 LaFave, Search and Seizure, *supra* § 2.6(b) (citations omitted). In the instant case, the relinquishment of possession and control occurred under circumstances that indicate that the defendant retained no justifiable expectation of privacy in the bag and its contents. *Id.* This is most clearly evidenced by the defendant's decision not to return to the row of seats in which he had left his bag. Thus, the discovery and seizure of the plastic bag containing the vials was not illegal and the evidence will not be suppressed.

■ The final question that must be addressed concerns the legality of the search of the defendant that was conducted by Detective Brennan. This search resulted in the recovery of a plastic bag containing a substance that tested positive for cocaine from the area around the defendant's ankle. The government has conceded that this search was non-consensual. However, the government argues that at the time of the search Detective Brennan possessed "probable cause to arrest." The Court agrees. The recovery of the vials which the Detectives knew to be drug paraphenalia provided the officers with the requisite probable cause to arrest. Once those vials were discovered and Detective Buss asked the defendant to accompany him to the rest room for a more thorough search, the defendant was as a matter of law under arrest. The fact that the formal arrest did not occur until after the search conducted by Detective Brennan uncovered other contraband does not in any way negate the

determination that the defendant was already technically under arrest. *Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). As the Supreme Court has stated, "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa" *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Justice Harlan in his concurrence in *Peters* articulately stated the controlling legal principle:

> If there is an escalating encounter between a policeman and a citizen, beginning perhaps with a friendly conversation but ending in imprisonment, and if evidence is developing during the encounter, it may be important to identify the moment of arrest, i.e., the moment when the policemen was not permitted to proceed further unless he by then had probable cause. This moment-of-arrest problem is not, on the Court's premises, in any way involved in this case: the Court holds that Officer Lasky had probable cause to arrest at the moment he caught Peters, and hence probable cause clearly preceded anything that might be thought an arrest. The Court implies, however, that although there is no problem about whether the arrest of Peters occurred *late* enough, i.e., after probable cause developed, there might be a problem about whether it occurred *early* enough, i.e., before Peters was searched. This seems to me a false problem. *Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden.* (emphasis added). There is *no* case in which a defendant may validly say, *"Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards."* ... (emphasis added).

> [A]n officer who does have probable cause may of course seize and search immediately. Hence while certain police actions will undoubtedly turn an encounter into an arrest requiring antecedent probable cause, the prosecution must be able to date the arrest as *early* as it chooses following the development of probable cause.

*Peters*, 392 U.S. at 76–77, 88 S.Ct. at 1908–1909 (Harlan, J., concurring). This Court is satisfied that Detective Brennan possessed the requisite probable cause to arrest prior to his searching of the defendant. Thus, the evidence subsequently discovered was the product of a search incident to arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The fact that the formal arrest temporally followed the actual search is of no moment.

Accordingly, the motion of defendant Morris to suppress the evidence seized from him is DENIED.