**UNITED STATES of America**

v.

**Roland FIELDS.**

**Crim. No. 89–0371 JGP.**

United States District Court, District of Columbia.

Jan. 28, 1992.

Diane Bratter, Washington, D.C., for defendant.

Clifford Cronk, Washington, D.C., for U.S.

MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The defendant is charged in a one count indictment filed on October 5, 1989, with unlawful possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (b)(1)(C). He filed a motion to suppress evidence which the court orally denied. He moved for reconsideration and after a further argument, the Court granted his motion for reconsideration and granted his motion to

suppress. *See* Memorandum filed March 23, 1990. The Government appealed that decision and the Court of Appeals 946 F.2d 1567, vacated the Court's Order filed on March 23, 1990 and remanded to this Court for further proceedings consistent with *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) and *United States v. Lewis,* 287 U.S.App.D.C. 306, 921 F.2d 1294 (1990). *United States v. Fields,* 946 F.2d 1567 (D.C.Cir.1991). The Court heard further arguments on November 18, 1991.[1]

## I

■ The Court will not set forth the underlying facts since those facts are described in the Court's Memorandum filed on March 23, 1990. Suffice it to note that the defendant, who was arrested at the Greyhound–Trailways bus station on September 8, 1989, consented to speak with officers of the Morals Division Interdiction Unit of the Metropolitan Police Department. In response to questions from the officers, he showed them his ticket and his Connecticut driver's license. The officers then asked whether the suitcase in the overhead rack belonged to him. He responded in the negative and stated that he did not have any luggage. At the time there was a total of only four passengers including the defendant on the bus and the officers asked the remaining passengers whether the suitcase belonged to them. All three passengers replied in the negative. One of the officers then took the bag down, opened it and began a search. Inside he discovered several bags containing a white powder, glassine envelopes, a screen, a spoon, and a rubber identifier stamp. The officer also found two prescription bottles in the bag that were in the name of the defendant and a bus ticket showing travel from Stanford, Connecticut, the defendant's home. At that point, the defendant was arrested.

The Court granted the motion to reconsider based upon two, then recent, decisions by judges of this court, *United States v. Cothran,* 729 F.Supp. 153 (D.D.C. 1990) (Judge Gesell) and *United States v. Lewis,* 728 F.Supp. 784 (D.D.C.1990) (Judge Sporkin). Those judges granted motions to suppress evidence under similar circumstances but those decisions were reversed. *See United States v. Lewis, supra.*

## II

In *Bostick,* the Supreme Court observed that:

> Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

111 S.Ct. at 2386 (citations omitted). With respect to the nature of the 'reasonable person', the Supreme Court noted that:

> We do reject, however, Bostick's argument that he must have been seized because no reasonable person would freely consent to a search of luggage that he or she knows contains drugs. This argument cannot prevail because the 'reasonable person' test presupposes an *innocent* person.

111 S.Ct. at 2388 (emphasis in the original, citations omitted). In *Bostick,* the Supreme Court also addressed the "free to leave" issue. The Supreme Court observed:

> Here, for example, the mere fact that Bostick did not feel free to leave the bus does not mean that the police seized him. Bostick was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. Bostick's movements were 'confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing

1. The defendant resides in Connecticut and has been released on his personal recognize ever since the Court suppressed the evidence. He has complied with all conditions of release and has appeared at hearings when required.

about whether or not the police conduct at issue was coercive.

111 S.Ct. at 2387. The Supreme Court went on to state:

> Like the workers in that case [*INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758 [80 L.Ed.2d 247 (1984) ], Bostick's freedom of movement was restricted by a factor independent of police conduct—*i.e.*, by his being a passenger on a bus. Accordingly, the 'free to leave' analysis on which Bostick relies is inapplicable. In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. This formulation follows logically from prior cases and breaks no new ground. We have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' Where the encounter takes place is one factor, but it is not the only one.

*Id.* (citations omitted).

The Supreme Court has clearly rejected a *per se* rule in such cases. Each case must be decided based upon it own peculiar facts. Here, utilizing the above guidelines, the Court concludes that a "reasonable person" would have spoken with the police officers. While it is true that it must be distasteful for any American citizen to be put in the position of the defendant and subjected to questions concerning his identification or the purpose of his travel and to the suggestion that he may be engaged in some illegal act, the legality of such general activity is no longer open to question. Of course, it remains that each case must be determined on its own facts, but unfortunately our law has slowly approached that of those nations which consistently make such demands on their travelling citizens. Here, the Court concludes that the defendant consented to speak with the officers.

■ The only possible issue that the Court can see is whether there was a requirement that the officers have advised the defendant that he had a right not to consent to speak with them. While it has previously been assumed that no such advice is required, Justice O'Connor apparently relied on that fact in deciding *Bostick*. She noted that: "Two facts are particularly worth noting. First, the police *specifically* advised Bostick that he had the right to refuse consent.... Second, at no time did the officers threaten Bostick with a gun." 111 S.Ct. at 2385 (emphasis this Court's). Less it be assumed that the advice by the officers that Bostick could refuse to consent was just a passing comment by the High Court, the Court referred to the same issue later in its opinion when it stated:

> As we have explained, no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required. Here, the facts recited by the Florida Supreme Court indicate that the officers did not point guns at Bostick or otherwise threaten him *and that they specifically advised Bostick that he could refuse consent.*

111 S.Ct. at 2388 (emphasis this Court's).

This Court does not read the Supreme Court as requiring that in every such encounter the officers must advise the person that he has a right to refuse consent—although it now seems that such advice is the better approach. The Supreme Court only notes that such advice is a factor that a court may consider in determining whether the person actually consented to speak with the officer and whether the person actually consented to a search of his person or property.

In *Bostick*, the officers "complete with badges" and one of them holding "a recognizable zipper pouch, containing a pistol approached Bostick." 111 S.Ct. at 2384. It may be that in *Bostick*, the Supreme Court was concerned with the fact that the outward display of the badge and the pistol in a recognizable pouch was just enough to require a court to make it necessary to

have other evidence to balance or neutralize the obvious display of authority. A clue that the display of authority was more than that generally experienced in this district is the fact that the dissenting justices referred to the officers in Bostick as "gun-wielding inquisitor[s]." 111 S.Ct. at 2393. The fact that the officers, notwithstanding their show of force, specifically advised Bostick that he had a right to refuse consent was obviously of great importance. It tended to neutralize to display of force.

In this case there was no such display of force. The officers were in plainclothes, they did not display their weapons, although it is unlikely that any reasonable person does not believe that officers carry weapons, and the officers spoke with the defendant in a conversational tone. Since there was no display of force, as in the *Bostick* case, the fact that the officers did not advise the defendant that he was not required to consent is not important.

Finally, the officers asked the defendant and *all* of the other passengers on the bus whether the suitcase belonged to them. *All* including the defendant responded in the negative. Under these facts, the Court concludes that the officers could rightfully assume that the suitcase had been abandoned and open it. *See United States v. Lewis*, 287 U.S.App.D.C. at 313, 315, 921 F.2d at 1301, 1303.

Taking all of the above factors into consideration, the Court concludes that the defendant s motion to suppress evidence should be denied.

It is hereby

ORDERED that the defendant s motion to suppress evidence is denied.