UNITED STATES of America, Plaintiff,

v.

LaShawn Y. McDONALD, Defendant.

No. IP94–43–CR.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 8, 1994.

Victoria Ursulskis, Asst. U.S. Atty., Indianapolis, IN, for plaintiff.

James H. Voyles, Robert R. Thomas, Indianapolis, IN, John H. Rion, Dayton, OH, for defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter came before the Court on defendant's motion to suppress any and all evidence obtained from a warrantless search of carry-on baggage which occurred on February 15, 1994.[1] For the reasons stated below, defendant's motion is denied.

## I. BACKGROUND

On February 15, 1994, Detective Janet Cotton of the Indianapolis Police Department ("IPD") boarded a bus at the Indianapolis Greyhound Bus Terminal on which defendant LaShawn McDonald was travelling.[2] Defendant and the other passengers had departed the bus temporarily during a layover, and several carry-on bags remained on the bus.

Cotton located two soft-sided bags stored in the overhead compartment of the bus. Acting without a warrant, Cotton sniffed and then felt the outside of the bags, which had no identification tags.[3] By manipulating the sides of the bags with her fingers, Cotton was able to feel "brick-like" objects, which her extensive experience in drug interdiction led her to believe were likely to be contraband.

When defendant reboarded the bus, she sat near the front of the bus and the luggage at issue. Cotton approached the defendant, identified herself as a police officer, and asked defendant personally if the luggage belonged to her. Defendant replied that the bags were not hers. Cotton then asked all the passengers collectively three times who owned the luggage. No one claimed ownership of the luggage.

Cotton proceeded to move the luggage to the steps of the bus and search it at that location. The luggage contained, *inter alia*, approximately eleven kilograms of cocaine in brick-like packages, a pair of size 24W jeans, and a size 22W shirt.

In the meantime, a passenger near the rear of the bus informed one of Cotton's fellow officers that he had seen defendant board the bus with the luggage in question. Cotton also judged that defendant was the only passenger on the bus likely to wear clothes of the size found in the bag and noted that defendant was sitting near the area in which the luggage had been stored.

At Cotton's invitation, defendant voluntarily disembarked the bus. Defendant told Cotton that she did not have a ticket or reboarding pass for the bus. Defendant also claimed that although she had luggage checked in the underneath luggage compartment of the bus, she had no claim ticket for that luggage. Defendant acted in what Cotton viewed as a suspicious manner, pulling some money from her pocket and pointing in the distance to where she claimed her ticket was blowing away, even though Cotton saw nothing blow out of her pocket. Defendant refused to let Cotton inspect the pair of jeans she was carrying in her arms, claiming that they were dirty. Meanwhile, two other passengers informed one of Cotton's fellow officers that the luggage in question belonged to defendant.

Defendant agreed to accompany Cotton to her police office at the bus terminal, where defendant was patted-down for weapons. During the pat-down, Cotton noticed that defendant's jeans were the same size as the jeans in the luggage.

Defendant was eventually arrested and indicted for knowingly possessing with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant brings the instant motion to suppress any and all evidence obtained from the

1. Defendant's motion states that the search occurred on February 15, 1993, but other documents as well as the testimony received at the hearing indicate that the search occurred in 1994.

2. Greyhound officials had entered into an arrangement with IPD whereby IPD was permitted access to the terminal areas and buses for purposes of conducting drug interdiction investigative activities.

3. At the hearing on this matter, an issue was made by defendant of Cotton's testimony that she only surmised that the bags had no identification after she was already touching and sniffing the bags. For the purposes of the Court's ruling today, this fact is not relevant.

warrantless search of her luggage.[4] Defendant argues that the initial touching of the exterior of the luggage, as well as the subsequent search of the interior of the luggage, constitute unreasonable searches and seizures under the Fourth Amendment.

## II. POLICE CONTACT WITH THE EXTERIOR OF THE LUGGAGE

■ "The Fourth Amendment protects against warrantless intrusions where an individual has a 'legitimate expectation of privacy'." *U.S. v. Scherer,* 673 F.2d 176, 181 (7th Cir.1982) (quoting *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citing *Katz v. U.S.,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967))), *cert. denied* 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334. Therefore, the central consideration in the Court's analysis must be whether defendant had a legitimate and reasonable expectation of privacy in the exterior of her luggage when placed in a public overhead compartment on a Greyhound bus.

■ There is no reasonable expectation of privacy in the airspace surrounding luggage which is being transported on a common carrier. *U.S. v. Lovell,* 849 F.2d 910, 913 (5th Cir.1988); *see also U.S. v. Rivera,* 825 F.2d 152, 158 (7th Cir.1987) (canine sniffing of luggage does not constitute a search within the meaning of the Fourth Amendment), *cert. denied, sub nom. Robles v. U.S.,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492; *U.S. v. Rem,* 984 F.2d 806, 812 (7th Cir.1993) (the privacy interest of people in transit on public thoroughfares who have placed their luggage on a publicly available rack is substantially diminished), *cert. denied,* — U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248.

[There is a] distinction between an individual's privacy interest in the interior and exterior of his bags.... [A] passenger has a reasonable expectation of privacy that the contents of his luggage will not be exposed absent consent or a search warrant. This reasonable expectation of privacy, however, does not extend to the airspace around the luggage.

*U.S. v. Daniel,* 982 F.2d 146, 150–51 (5th Cir.1993) (citations omitted).[5] Therefore, rubbing, squeezing, manipulating, and sniffing the exterior of defendant's luggage did not constitute an unreasonable search or seizure within the meaning of the Fourth Amendment.[6]

## III. POLICE ACCESSING OF THE INTERIOR OF THE LUGGAGE

■ A person's privacy interest in the contents of personal luggage can be forfeited where the person abandons the luggage. *Rem,* 984 F.2d at 810.

The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is to be made by objective standards. An expectation of privacy is a question of intent which may be inferred from words spoken, acts done, and other objective facts.

*Id.* (citations omitted). "This court must ask, then, whether [defendant] relinquished the suitcase[s] under circumstances which indicated to the police that [s]he had no justified expectation of privacy in the contents of [those suitcases]." *Id.* at 811. For the purposes of this inquiry, the focus must be on what was objectively made known to the

4. The parties stipulated, for the purposes of this motion, that defendant owns the luggage in question.

5. Any person who has travelled on a common carrier knows that luggage placed in an overhead compartment is always at the mercy of all people who want to rearrange or move the previously placed luggage in order to squeeze additional luggage into the compartment or remove previously placed luggage.

6. Any subjective expectation of privacy defendant may have had in the way that her luggage feels or smells from its exterior is not one that society

is prepared to recognize as reasonable. In this sense, the instant case is analogous to cases involving infrared cameras which detect heat that is escaping buildings (usually in order to locate marijuana-growing operations). *See U.S. v. Pinson,* 24 F.3d 1056, 1059 (8th Cir.1994) ("[a]ny subjective expectation of privacy [defendant] may have had in the heat radiated from his house is not one that society is prepared to recognize as "reasonable"). While there is no doubt that such methods of crime detection do involve some amount of intrusion by law enforcement, they do not rise to the level of unreasonable searches under the Fourth Amendment.

police during the time period directly preceding the search. *Id.* at 813.

 Before Officer Cotton inspected the interior of the luggage, she directly asked defendant if the luggage belonged to her. The defendant stated that the luggage did not belong to her. In addition, to the three generalized inquiries of all the occupants of the bus, no response from the defendant was forthcoming. Defendant's specific oral disclaimer and general unresponsiveness, as well as other objective facts (such as the bags having no nametags), amounted, in totality, to an abandonment of the luggage. *Rem,* 984 F.2d at 814; *U.S. v. De Los Santos Ferrer,* 999 F.2d 7, 9 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462; *U.S. v. Tolbert,* 692 F.2d 1041, 1044–45 (6th Cir.1982), *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983); *U.S. v. Jackson,* 544 F.2d 407, 411 (9th Cir. 1976); *U.S. v. Fields,* 786 F.Supp. 18, 21 (D.D.C.1992), *aff'd,* 988 F.2d 1280 (D.C.Cir. 1993).

Defendant contends that her oral disclaimer should not be considered an abandonment of her luggage because the situation created undue pressure on her to deny ownership of the bags. There is no undue pressure where, as here, the disclaimer occurred at the outset of questioning by one police officer who was not even wearing a uniform; there was no evidence that the atmosphere was in any way coercively oppressive. *See De Los Santos Ferrer,* 999 F.2d at 10; *Fields,* 786 F.Supp. at 20–21; *see also U.S. v. Gonzales,* 979 F.2d 711, 713 (9th Cir.1992) (consensual nature of police questioning should be analyzed in terms of what an innocent person—not carrying contraband— would do in response to the inquiry) (citing *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)).[7]

Defendant voluntarily abandoned the luggage before it was opened and searched. Because the "Fourth Amendment does not

extend to abandoned property," no Fourth Amendment violation took place. *Rem,* 984 F.2d at 810.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to suppress is hereby denied.

It is so ORDERED.

---

7. Defendant similarly argues, citing to *U.S. v. Beck,* 602 F.2d 726 (5th Cir.1979), that the abandonment of the luggage was in some way caused by improper police conduct and, as such, the abandonment is not valid. *Beck* involved an illegal stop prior to the abandonment of the contraband. Defendant has failed to persuade

the Court how *Beck* is analogous or relevant. *See U.S. v. Miller,* 974 F.2d 953, 958 (8th Cir. 1992) ("[a]n abandonment that occurs in response to proper police activity has not been coerced in violation of the Fourth Amendment") (citations omitted).