**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan Gutierrez MEDINA, Defendant.**

**No. CR–98–2107–EFS.**

United States District Court,
E.D. Washington.

Dec. 22, 1998.

Gregory Morris Shogren, Yakima, WA, for U.S.

Jerry D. Talbott, Talbott Simpson Gibson Davis & Bruns, PS, Yakima, WA, Christina L. Hunt, Federal Defenders, Yakima, WA, for Juan Gutierrez Medina.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

SHEA, District Judge.

Before this court is the Defendant's Motion to Suppress Evidence (Ct. Rec 19). The Court heard the Motion on October 29, 1998, in Yakima, Washington. The Plaintiff was represented by Greg Shogren of the United States Attorney's Office. The Defendant appeared in person and was represented by his attorney, Jerry Talbot. The government called as witnesses Agents McElderry and Gillian of the Drug Enforcement Administration and Agents Murray and Minyard of the Immigration and Naturalization Service. During their testimony Exhibits A, Consent of the Bus Driver to enter and search the bus, B, DEA Rights Form, and C, Written Consent of the of Passengers to Search were offered by the Government and were admitted into evidence. The Defendant called no witnesses and offered no exhibits. The Court then heard oral argument by the attorneys and ordered supplemental briefing. Both parties timely filed their supplemental materials.

After considering the testimony and the exhibits as well as the pleadings and arguments of counsel, the court finds the following:

## I. FINDING OF FACTS

Drug Enforcement agents ("DEA") in Eastern Washington had learned from DEA agents in other states that northbound buses had been interdicted and drugs had been found both on occupants and in abandoned luggage. The DEA and Immigration and Naturalization Service agents ("INS") in this district agreed to collaborate on an interdiction of a Frontera Del Norte bus when it made a regularly scheduled stop in Toppenish, Washington, on September 3, 1998.

On that date, agents from those agencies and local law enforcement did meet the bus at its stop in Toppenish, Washington. A valid, signed consent from the operator of the bus was obtained to search the bus. Agents from both agencies entered the bus and advised the occupants that their purpose for boarding was to conduct a consensual encounter and to search for contraband, narcotics and illegal aliens. The occupants were advised in Spanish and in English by the agents that they did not have to answer questions and were free to leave.

INS Agent Murray then entered the bus and asked each occupant the country of their birth and if they had documents or had entered illegally. Three passengers indicated that they were born in Mexico and did not have documents. Those three were taken from the bus. INS Agent Minyard interviewed the defendant at that time. All conversations with the defendant were in Spanish. The defendant told Agent Minyard that he was a citizen of Mexico, had illegally entered the United States without inspection and had no documentation. At that point, Agent Minyard placed the defendant under arrest. It is standard INS security procedure after taking a person into custody to search any baggage in his possession. When asked by Agent Minyard if he had luggage, the defendant produced only one baggage ticket. When that bag was shown to the defendant, he did not indicate to any agent at any time that he had a second bag or make complaint that he did not have all of his luggage. That bag was searched by the INS agent and no contraband was found. Shortly thereafter, the defendant and the other two individuals who were being detained by the INS were taken to another location. Before leaving, the INS agents communicated to the DEA agents that only one of the three passengers had claimed a bag.

DEA agent Gillian boarded the bus and spoke in Spanish to the remaining passengers about a consensual search of them and their luggage. Consent forms in Spanish and English were signed by the remaining occupants of the bus; their luggage was searched and no drugs were found. A green backpack with the name of Efrain Aguilar on the tag remained unclaimed by any of the remaining passengers. Agent Gillian inquired of those passengers if any of them were Efrain Aguilar and none indicated that they were. Agent Gillian declared the backpack abandoned and opened it. It contained slightly more than a kilogram of methamphetamine. Upon checking the passenger list of the bus, Agent Gillian found the name "Efrain Aguilar" on it. Presumably recalling that three passengers had been removed to another location by the INS, he then traveled to the location where the INS was holding the defendant.

Upon arriving at that location, the agent noticed a black bag with the name of "Efrain Aguilar" on it. The INS agents then told him that the defendant who had identified himself to them as Juan Medina had claimed it. Without giving the defendant Miranda warnings, Agent Gillian asked the defendant for his passenger ticket. The defendant produced a passenger ticket in the name of "Efrain Aguilar". Agent Gillian then gave the defendant his Miranda warnings in Spanish. The Defendant responded in Spanish. The defendant agreed to give a written statement. In it, he stated that he had been paid $200.00 dollars by an Efrain Aguilar to transport the drugs found in the backpack. There was no evidence that this confession

was coerced. On October 15, 1998, the Defendant was indicted for the crime of Possession with Intent to Distribute a Controlled Substance: Methamphetamine.

On September 4, 1998, the INS determined from its records that the Defendant had previously been deported after committing a felony.

## II. ISSUES

The following issues have been raised and require decision by this court:

ISSUE 1. After the initial statements Defendant made while on the bus, should any other statements by the Defendant to the INS agents be suppressed?

ISSUE 2. Should the evidence of drugs found in the backpack be suppressed?

ISSUE 3. Should the evidence of the passenger ticket in the name of Efrain Aguilar be suppressed?

ISSUE 4. Should the written confession given by the Defendant to DEA agents after being given his Miranda warnings be suppressed?

## ISSUE 1.

■ The statements made by the Defendant both while on the bus and then to Agent Minyard regarding his citizenship and illegal entry without proper papers were properly obtained by the INS agents. The defendant was not then either "seized" nor was he "in custody".

Encounters of a similar kind have been found by the United States Supreme Court not to constitute a "seizure" in violation of the Fourth Amendment to the United States Constitution. In *Florida v. Bostick,* the Court reversed a decision of the Florida Supreme Court which adopted a per se rule prohibiting police from randomly boarding buses as part of their effort stop the flow of illegal drugs into and within this country. The Court stated:

> Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to

disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in *Terry v. Ohio,* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]: "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

> Since *Terry,* we have held repeatedly that mere police questioning does not constitute a seizure. In *Florida v. Royer,* [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)] for example, we explained that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."

> There is no doubt that if this same encounter had taken place before Bostick boarded the bus or in the lobby of the bus terminal, it would not rise to the level of a seizure. The Court has dealt with similar encounters in airports and has found them to be "the sort of consensual encounter[s] that implicat[e] no Fourth Amendment interest." We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual—as long as the police do not convey a message that compliance with their requests is required.

501 U.S. 429, 434–35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (alterations in original) (citations omitted).

There is no evidence in this case that either the DEA or INS agents conducted themselves in any way to prevent any passenger from departing nor is there any evidence that any passenger was coerced into cooperating. The encounter conducted by the DEA and INS agents did not amount to a seizure in violation of the Fourth Amendment. The statements voluntarily given by defendant to the INS agents prior to his arrest were not given while in custody and therefore were not given in violation of his Fifth Amendment rights.

The defendant was not "in custody" until Agent Minyard arrested him after the defendant voluntarily admitted in conversation with him that he was a citizen of Mexico here illegally without documents.

## ISSUE 2.

The next issue is whether of not DEA Agent Gillian conducted an illegal search of the backpack labeled with a tag in the name Efrain Aguilar in which the methamphetamine was found. No one remaining on the bus after the removal of three passengers by the INS claimed the backpack and none admitted being Efrain Aguilar which was the name on the backpack. The DEA agents knew from conversations with the INS agents before they departed with the other three passengers that those individuals including the defendant had claimed their luggage which was being taken with them. In fact, it is undisputed that the defendant had claimed only one piece of luggage when he had the opportunity. It is also undisputed that the defendant produced only one claim ticket and did not indicate in any way that he had a second bag. The question then becomes, did the defendant abandon the backpack allowing the DEA to search it?

■ When luggage is considered abandoned, there is no expectation of privacy under the Fourth Amendment. *See United States v. Thomas*, 864 F.2d 843, 845–6 (D.C.Cir.1989). To determine whether there is abandonment, district courts must focus on the intent of the person who is alleged to have abandoned the object. The test is an objective one and intent may be inferred from words spoken, acts done and other objective acts. *See Thomas*, 864 F.2d at 846. "Interdiction" cases maintain that once all passengers on a bus deny ownership there is no expectation of privacy. *See Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (remanding with new test to make finding whether consent was voluntary and whether officers could enter bus without articulable suspicion); *United States v. Tugwell*, 125 F.3d 600 (8th Cir. 1997) (finding abandonment where defendant left luggage at bus station after all passenger were told to claim luggage and two announcements were made in the bus station); *United States v. McDonald*, 100 F.3d 1320 (7th Cir.1996) (holding defendant's repeated denial of ownership amounted to voluntary abandonment). When a piece of luggage is left behind in a public place, there is no reasonable expectation of privacy in it. *See Thomas*, 864 F.2d at 846.

■ Based on the facts found above by this Court, it is clear that the defendant had a reasonable opportunity to claim the backpack and was aware that he was being taken from the bus to another location by the INS agents. His action in not claiming the backpack in these circumstances constituted abandonment of the backpack and any Fourth Amendment privacy interest he had in it. The ultimate result would be no different even if you assume that Agent Gillian had taken the backpack unopened to the defendant's location. The defendant would have had three choices relevant to this discussion: to claim the backpack and deny consent to a DEA search, deny ownership, or simply remain silent. The latter two options constitute abandonment and relinquishment of any privacy right in the backpack. Alternatively, defendant's choice of the first option would have resulted in a legal security or inventory search by the INS and the doctrine of inevitable discovery would apply.

*See* Aff. of Agent Minyard. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Lang,* 149 F.3d 1044 (9th Cir.1998); *United States v. Andrade,* 784 F.2d 1431 (9th Cir.1986).

### ISSUE 3.

Upon arriving at the location of the defendant, Agent Gillian observed the bag with the name Efrain Aguilar on it which had been originally claimed by the defendant. After being told by INS agents that the bag had been claimed by the defendant who had identified himself as Juan Medina, the agent without giving defendant his Miranda warnings asked the defendant if he had a passenger ticket. The defendant gave him a ticket in the name of Efrain Aguilar which matched the name on the passenger list as well as the name on both the bag and the backpack.

At that time, the defendant was in the custody. Further, Agent Gillian knew that the backpack with the name Efrain Aguilar contained illegal drugs, that the defendant had claimed a bag with the name of Efrain Aguilar, and that the passenger list showed a passenger ticket had issued to Efrain Aguilar. In these circumstances, law enforcement officers were obligated to give the defendant his Miranda warnings before asking him for his passenger ticket. *See United States v. Disla,* 805 F.2d 1340 (9th Cir.1986) (holding that questioning a defendant as to his residence subjected him to "interrogation" for purposes of Miranda, where officer knew that large quantity of cocaine and cash had been found at an apartment and question of where the defendant lived was relevant to element of crime of possession of cocaine that the officer had reason to suspect the defendant had committed); *see also United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1046 (9th Cir.1990) ("The ruling in Miranda prohibits 'custodial interrogation' unless the government first gives warnings to the suspect."). Custodial questioning constitutes interrogation "whenever, under all the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect." *Gonzalez–Sandoval,* 894 F.2d at 1046 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).

■ However the failure to give the Miranda warnings to the defendant does not result in the suppression of this passenger ticket in the name of Efrain Aguilar. Again, the doctrine of inevitable discovery applies. *See supra* Issue 2.

### ISSUE 4.

■ After receiving the passenger ticket in the name of Efrain Aguilar from the defendant, Agent Gillian gave the defendant his Miranda warnings in Spanish. The defendant responded in Spanish that he understood and then agreed to give a written statement. In the written statement he admitted that he had been paid $200.00 by an Efrain Aguilar to transport the backpack with the drugs in it. This written incriminating statement was given after Miranda warnings and there is no evidence that it was coerced or involuntary. As such, it is admissible in evidence against the defendant. *See United States v. Gonzalez–Sandoval,* 894 F.2d at 1048.

Accordingly,

IT IS HEREBY ORDERED:

1. Defendant's Motion to Suppress Evidence (Ct.Rec.19) is DENIED.

IT IS SO ORDERED. The District Court Executive is directed to enter this order and to provide copies to counsel.